IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DANIEL LEE ROMANCZUK,

        Plaintiff,

v.                                        CIV 17-0231 KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

        Defendant.

# <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum (*Doc. 22*) filed on August 21, 2017. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 3, 10, 11.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is not well-taken and will be denied.

## I.    Procedural History

Daniel Lee Romanczuk (Plaintiff), born on December 16, 1990, was initially found eligible for Supplemental Security Income (SSI) on April 1, 1999, due to attention deficit hyperactivity disorder (ADHD) and affective/mood disorders pursuant to Childhood Listing 112.02. *See* Administrative Record[1] (AR) at 30, 56, 76. The Social Security Administration (SSA) reviewed Plaintiff's benefits when he reached age 18 in June

---

[1] Documents 17-1 and 17-2 contain the sealed Administrative Record. *See Docs. 17-1; 17-2.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

2010, and found that he no longer qualified for SSI. AR at 30, 68-70. On June 23, 2010, Plaintiff requested reconsideration of the decision to terminate his benefits. AR at 72. An SSA Disability Hearing Officer reviewed Plaintiff's file and denied his request for reconsideration on April 11, 2011 (AR at 73-85), finding that "as an adult, [Plaintiff's] mental impairments are severe, but should not prevent him from performing at least simple, unskilled work related activities on a sustained basis." AR at 80.

Plaintiff filed a Request for Reconsideration of the Hearing Officer's decision and sought a hearing with an Administrative Law Judge (ALJ). AR at 86, 90. On January 24, 2013, ALJ Paula Fow filed an Order of Dismissal, dismissing Plaintiff's request for a hearing due to numerous failed attempts to contact Plaintiff and his failure to appear at the scheduled hearing. AR at 514-15. Consequently, the April 11, 2011 decision remained in effect. AR at 515.

Plaintiff appealed ALJ Fow's dismissal and sought another hearing. AR at 569. On June 8, 2015, the Appeals Council granted Plaintiff's request for review and vacated ALJ Fow's decision because "[t]he electronic file contain[ed] evidence not located in the paper file" that ALJ Fow did not consider (AR at 574). *See* AR at 572-77. Plaintiff sought another oral hearing, which ALJ Barry O'Melinn conducted on February 12, 2016. AR at 1106-25. Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 1106-25.

ALJ O'Melinn issued an unfavorable decision on April 12, 2016. AR at 27-46. On April 21, 2016, Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council. *See* AR at 21. On December 23, 2016, the Appeals Council denied Plaintiff's request for review. AR at 13-16. Consequently, the ALJ's decision

became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.    Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a). The Commissioner must use a sequential five-step evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), he is unable to perform his past relevant work. 20 C.F.R § 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [his] medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that"

Plaintiff retains sufficient RFC "to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. § 416.920(a)(4)(v).

At Step One of the process, ALJ O'Melinn found that Plaintiff "has not engaged in substantial gainful activity[,]" although the ALJ also noted certain inconsistencies in Plaintiff's testimony and the evidence regarding whether he had worked in the past. AR at 33 (citing 20 C.F.R. §§ 404.1571-1576); *see also* 20 C.F.R. §§ 416.971-976.

At Step Two, the ALJ concluded that "[s]ince June 1, 2010 and prior to attaining age 22, [Plaintiff] had the following severe impairments: organic mental and affective disorders; mild intellectual disability, bipolar disorder, and anxiety disorder; seizure disorder; and back disorder." AR at 33 (citing 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 416.920(c). The ALJ found that Plaintiff's allegations of "legal blindness and insomnia are not medically determinable impairments, as there were no medical signs or laboratory findings to substantiate the existence of such." AR at 34.

At Step Three, the ALJ found that "[s]ince June 1, 2010 and prior to attaining age 22, [Plaintiff] did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 34 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526); *see also* 20 C.F.R. §§ 416.920(d), 416.925, 416.926. In making his determination, ALJ O'Melinn considered listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 2.02, 2.03, and 2.04 (vision problems), 11.02 (convulsive

epilepsy), 11.03 (non-convulsive epilepsy), and listings in 12.02, 12.04, and 12.05 (mental impairments). AR at 34.

At Step Four, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" the ALJ did not find Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [to be] entirely consistent with the medical evidence and other evidence in the record . . . ." AR at 37. The ALJ considered the evidence of record, including medical records from 2009 through 2016 and several mental health evaluations, a statement from Plaintiff's mother, and Plaintiff's testimony at his 2016 hearing. AR at 38-44.

ALJ O'Melinn found that Plaintiff "has no past relevant work." AR at 44 (citing 20 C.F.R. § 404.1565); *see also* 20 C.F.R. § 416.965. Ultimately, the ALJ found that

> since June 1, 2010 prior to attaining age 22, [Plaintiff] had the [RFC] to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except that he is limited to occasional climbing of ramps and stairs; and cannot climb ladders, ropes, or scaffolds. He is limited to frequent balancing, stooping, kneeling, crouching, and crawling. He must avoid concentrated exposure to extreme cold, heat, noise, and airborne irritants such as fumes, odors, dusts, gases, and poorly vented areas. He must avoid all exposure to operational control of moving machinery, unprotected heights, and hazardous machinery. He can understand, remember, and carry out simple work instructions, make commensurate work related decisions, and respond appropriately to supervision, co-workers, and work situations. He can deal with routine changes in work setting and maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday. He would be most suitable for jobs working primarily with things and not people.

AR at 36-37.

The ALJ stated that he "asked [a VE] whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC] prior to

5

attaining age 22." AR at 45. "The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as:" (1) cleaner polisher, (2) hotel cleaner, and (3) checker 1. AR at 45. The ALJ found that the VE's "testimony is consistent with the information contained in the Dictionary of Occupational Titles." AR at 45. Consequently, the ALJ found that Plaintiff "has not been under a disability . . . any time since June 1, 2010 and prior to December 15, 2012, the date he attained age 22." AR at 45 (citing 20 C.F.R. §§ 404.350(a)(5), 404.1520(g)); *see also* 20 C.F.R. § 416.920(g). The ALJ determined that Plaintiff's "disability ended on June 1, 2010, and [Plaintiff] has not become disabled again since that date." AR at 45 (citing 20 C.F.R. §§ 416.987(e), 416.920(g)).

## III.    Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in

disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

## IV. Discussion

Plaintiff asserts two general issues in his Motion. First, Plaintiff argues that the ALJ failed to properly consider opinion evidence from Dr. Sachs. *Doc. 22* at 4-9. Second, Plaintiff contends that ALJ O'Melinn failed to consider or explain how he evaluated the impact of Plaintiff's combination of impairments. *Id.* at 9-10.

### A. The ALJ adequately assessed Dr. Sachs' opinion.

#### 1. Dr. Sachs' evaluation and opinion

David Sachs, Ph.D., performed a psychological evaluation of Plaintiff in April 2014. AR at 650-56. Dr. Sachs' related the following history as shared by Plaintiff: Plaintiff reported "a history of seizures when he was approximately 4 years old." AR at 653. He said that with his current medication, he has seizures twice a day. AR at 653. He described his seizures as staring "blankly for 5 to 10 minutes." AR at 653. Plaintiff reported a serious car accident that resulted in changes to his "coordination as well as difficulties with balance." AR at 653. He also reported a history of physical, emotional,

and sexual abuse by his father, "who has not been present in his life since he was 7 years old." AR at 654. Plaintiff "frequently define[d] himself as 'evil' and stated that he was told this as a child." AR at 654.

Plaintiff reported that his parents placed him in foster care due to his violent behavior when he was nine years old, and he remained in foster care until he turned 18 years old. AR at 653. Plaintiff said that he has been in and out of jail, and his problems began when he was 16 years old. AR at 653. Dr. Sachs noted that Plaintiff's "history of difficulties go [sic] back to at least the age of 12 years old." AR at 653. Plaintiff "stated that he is not a good person in his job and 'I use my hands and won't hesitate to hit someone if they piss me off.'" AR at 653.

Plaintiff stated that "he heard voices 'a couple of times and thought I heard something[,]'" but Dr. Sachs did not believe Plaintiff was experiencing hallucinations. AR at 653. Dr. Sachs did note that Plaintiff's thoughts of hurting people, even though he did "not want to think about hurting people[,]" showed "some ideation which poses difficulty for him and is beyond his control." AR at 653. Plaintiff "acknowledge[d] a past history of marijuana usage on a 'wake and bake' basis" and asserted that marijuana usage makes "him less likely to hurt people." AR at 653.

Plaintiff reported mood changes without appreciable triggers, which Dr. Sachs found "consistent with a diagnosis of isolated explosive disorder." AR at 653-54. Dr. Sachs also noted "that there is no history of stealing or malevolence to others[,] although [there is] a clear history of problems with uncontrolled anger, to the point of rage . . . ." AR at 654.

Dr. Sachs administered a variety of tests to Plaintiff over two visits and found the following scores noteworthy: on the Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV), Plaintiff had a Full-Scale IQ of 72 and performed "in the borderline range in terms of Verbal Comprehension, Perceptual Reasoning, and his General Ability Index." AR at 650-51, 654. On the Wechsler Memory Scale, he had a Verbal IQ of 75 and tested in the borderline range for Verbal Memory, General Memory, and Delayed Memory, and in the average range for Visual Memory. AR at 651, 654. Dr. Sachs found that Plaintiff exhibited problems concentrating on the Wechsler Memory Scale, and his drawings were "markedly impulsive and impaired his obtained score." AR at 654.

Plaintiff's results on the Wide Range Achievement Test IV showed that he reads at an upper 8th grade level, spells at a 6th grade level, and performs math at an upper 4th grade level. AR at 651, 654-55. Dr. Sachs observed that Plaintiff's "achievement is still below what might be expected based on his IQ." AR at 655. The Barkley Adult ADHD questionnaire revealed that Plaintiff "is easily distracted by extraneous stimuli, makes decisions impulsively, starts projects without reading or listening to directions, has difficulty doing things in sequence, and difficulty organizing tasks and activities." AR at 655.

Dr. Sachs found that Plaintiff's responses to the Personality Assessment Inventory ("PAI") "biase[d the] protocol[,]" as evidenced by the fact that "[h]is Negative Impression Management score [was] at the upper limit of the test . . . ." AR at 655. "The PAI negative impression management scale ('NIM') has been identified as an empirically supported malingering screening measure." *United States v. Brown*, 147 F. Supp. 3d 312, 325 (E.D. Pa. 2015) (citing Marcus T. Boccaccini, Daniel C. Murrie, &

Scott A. Duncan, *Screening for Malingering in a Criminal-Forensic Sample with the Personality Assessment Inventory*, 18.4 Psychological Assessment 415, 420 (2006) ("Although NIM and [Malingering] MAL both demonstrated large effect sizes (AUC values of .88 and .81, respectively) for identifying malingerers, the effect size for NIM was clearly larger.")). In *Costa v. Astrue*, 743 F. Supp. 2d 1196 (D. Ore. 2010), the psychologist noted that the plaintiff's high scores on the NIM was likely evidence that he "was deliberately trying to portray himself in a negative way to get services that he otherwise may not be qualified for." *Costa*, 743 F. Supp. 2d at 1199 (quotation omitted). Here, Dr. Sachs observed that Plaintiff's responses to almost "all of the scales showed significant elevations with scores" that were "above levels found even within clinical populations." AR at 655. For this reason, Dr. Sachs was unable to specifically interpret the PAI. AR at 655.

Dr. Sachs noted that the Rorschach results "indicate[d] an individual who is almost totally reactive to what occurs within his environment . . . ." AR at 655. Plaintiff has "[s]ignificant difficulties" in his interpersonal relationships and interpersonal skills, and he exhibits poor judgment. AR at 655. Finally, Dr. Sachs observed that Plaintiff "has difficulty with fine motor coordination . . . ." AR at 655.

Dr. Sachs opined that Plaintiff "will have marked difficulties obtaining any employment." AR at 655. Dr. Sachs noted Plaintiff's "long history of isolated explosive disorder which shows somewhat more control with his current medications but, by his own admission, he struggles with impulse control and this is also noted in the course of testing." AR at 655. Plaintiff exhibits poor social judgment and extremely poor self-

esteem and has "marked attention deficit disorder . . . ." AR at 655. Dr. Sachs

diagnosed a mild cognitive disorder due to a traumatic brain injury. AR at 655.

### 2. The ALJ adequately assessed Dr. Sachs' opinion.

"When considering the weight of non-treating sources, the ALJ must consider"

the factors as laid out in 20 C.F.R. § 404.1527(c) and § 416.927(c). *See Dingman v.*

*Astrue*, No. 08-cv-02175-PAB, 2010 WL 5464301, at *4 (D. Colo. Dec. 29, 2010)

(citation omitted). The factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (quotations omitted).

With respect to the first and fifth factors, ALJ O'Melinn noted that Plaintiff saw

David Sachs, Ph.D., in April 2014 for a psychological evaluation. AR at 43, 650-56. With

respect to the second factor, ALJ O'Melinn adequately summarized Dr. Sachs'

examination of Plaintiff and his findings. AR at 43. ALJ O'Melinn noted Dr. Sachs'

diagnosis (mild cognitive disorder) and computation of Plaintiff's full-scale IQ (72). AR at

43 (citing AR at 654). The ALJ related Dr. Sachs' opinion regarding Plaintiff's "marked

difficulties obtaining any employment" and his observations regarding Plaintiff's "fine

motor coordination, impulse control, ADHD, and poor self-esteem." AR at 43 (citing AR

at 655). ALJ O'Melinn found the following "Clinical Impressions" noteworthy: Plaintiff's

"mother reported that he was doing much better with anger management and attributed

the termination of his Social Security benefits to testifying on his own at his hearing without any other assistance." AR at 43 (citing AR at 653). While Plaintiff "reported having hallucinations[,] . . . Dr. Sachs opined that [Plaintiff] was not experiencing hallucinations." AR at 43 (citing AR at 653). Plaintiff reported "having seizures twice a day despite his medication." AR at 43 (citing AR at 653). Dr. Sachs observed that Plaintiff's "intellectual functioning was almost identical to [sic] in 2004[,]" and Plaintiff was reading at an upper eighth grade level.[2] AR at 43 (citing AR at 654).

With respect to the third factor, Plaintiff asserts that "[t]he ALJ failed to explain how the objective testing results are not consistent with the opinion given by Dr. Sachs." *Doc. 22* at 6 (citing AR at 43). The Commissioner contends that this error "was harmless because the ALJ provided other valid reasons for discounting Dr. Sachs's opinion." *Doc. 26* at 7 (citing *Lax*, 489 F.3d at 1088). As the Tenth Circuit has found, "although the ALJ's decision need not include an *explicit discussion* of each factor, the record must permit [the Court] to reach the conclusion that the ALJ *considered* all of the factors." *Andersen v. Astrue*, 319 F. App'x 712, 720 n.2 (10th Cir. 2009).

With respect to the fourth factor, ALJ O'Melinn gave Dr. Sachs' opinion "little weight as it was not consistent . . . with the objective medical evidence." AR at 43. Plaintiff argues that "[t]he ALJ failed to explain accurately how the opinion of Dr. Sachs is not consistent with the objective medical evidence." *Doc. 22* at 8 (citing 20 C.F.R. § 404.1527(c)(3)); *see also* 416.927(c)(3). ALJ O'Melinn mentioned, however, that this

---

[2] ALJ O'Melinn actually wrote that Plaintiff was *not* reading at an upper eighth grade level. AR at 43. The Court believes this was a typographical error, as the ALJ cites to Dr. Sachs' report, which specifically states that Plaintiff's reading ability is at an upper eighth grade level. AR at 43 (citing AR at 655). Plaintiff did not take issue with the ALJ's statement regarding Plaintiff's reading ability.

medical evidence included "[t]reatment notes" that established Plaintiff "cared for his niece, did odd jobs, and worked in construction. He also was taking classes in order to obtain custody of his son." AR at 43; *see also* AR at 30, 882 (cleaned houses), 42, 423 (washed construction equipment), 35, 420 (cared for a niece), 804 (attended parenting classes to "get his son out of CYFD"). Clearly, this evidence appears inconsistent with Dr. Sachs' opinion that Plaintiff "will have marked difficulties obtaining any employment . . . ." AR at 655.

Finally, with respect to the fifth factor, ALJ O'Melinn found that Dr. Sachs' opinion was entitled to little weight in part because Plaintiff "was inaccurate in describing his symptoms[,]" which "reduce[d] his ability to accurately assess [Plaintiff's] condition." AR at 43. The Court notes here Dr. Sachs' own finding concerning Plaintiff's score on the Negative Impression Management Score (part of the PAI), which suggested malingering. *See* AR at 655; *Brown*, 147 F. Supp. 3d at 325. Further, the ALJ noted that Plaintiff stated he had hallucinations, but Dr. Sachs did not believe Plaintiff was experiencing hallucinations. AR at 653. There is substantial evidence to support the ALJ's finding that Plaintiff inaccurately described his symptoms. *See Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (finding it was proper where, due to plaintiff's "propensity to exaggerate her symptoms and manipulate test results, the ALJ refused to credit opinions of treating and examining medical providers that depended on [plaintiff's] veracity") (citation omitted).

Plaintiff highlights three other medical records here: the June 3, 2010 and November 15, 2010 evaluations from George DeLong, Ph.D.; and a January 21, 2011 workshop evaluation done by Joseph L. Burridge, Certified Vocational Evaluation

Specialist. *Id.* at 6-8. It is unclear why Plaintiff cites to Dr. DeLong's opinions, as Dr. DeLong opined in June 2010 that Plaintiff's "ability to . . . complete a normal workday and workweek without interruptions from psychologically-based symptoms is not significantly limited" (AR at 424), and the ALJ gave Dr. DeLong's June 2010 evaluation "great weight." AR at 42. Moreover, the ALJ reiterated Dr. DeLong's November 2010 opinion that Plaintiff was malingering at his second examination. AR at 43, 480.

The Court notes that ALJ O'Melinn adequately summarized Dr. DeLong's evaluations. *See* AR at 41-42, 43. The ALJ mentioned that in June 2010, Plaintiff self-reported to Dr. DeLong that "his last employment" – high pressure washing of heavy equipment – "was terminated because he was unable to work more than 20 hours per week in order to maintain his 'check,' which Dr. DeLong believed was a reference to his Social Security entitlement." AR at 42 (citing AR at 423). Dr. DeLong further opined that Plaintiff's "ADHD and bipolar symptoms appear to be well controlled with his current medication . . . ." AR at 42 (citing AR at 423). Moreover, Dr. DeLong

> opined that [Plaintiff] was able to understand and remember short and simple instructions without limitations and could carry out these instructions, maintain attention and concentration for brief periods, and complete a normal workday and workweek without interruptions from his mental health symptoms. He also believed that [Plaintiff] would not have significant limitations with respect to his ability to interact appropriately with others. [The ALJ gave Dr. DeLong's] opinion great weight . . . .

AR at 42 (citing AR at 433). The ALJ also recited Dr. DeLong's finding that Plaintiff "would require vocational rehabilitation to transition to independent employment."[3] AR at 42 (citing AR at 423).

---

[3] Plaintiff alleges that the ALJ stated that "Dr. DeLong believed that [Plaintiff] could return to his employment washing heavy equipment on a full-time basis[,]" when what Dr. DeLong "actually said [is] that [Plaintiff] was a candidate to return to this job after vocational rehabilitation and with

In a second evaluation on November 15, 2010, Dr. DeLong "noted that [Plaintiff's] presentation was extremely unusual and that there was a dramatic discrepancy between his performance on the previous examination and administered the Rey 15 test and opined that this was a clear indication of a lack of effort/malingering." AR at 43 (citing AR at 478, 480). Dr. DeLong concluded that Plaintiff might benefit from a "workshop evaluation" to clarify Plaintiff's "ability to initiate, sustain, and maintain a normal routing and work-related behaviors . . . ." *Id.* at 7 (citing AR at 481). The Court finds that Dr. DeLong's evaluations support the ALJ's RFC determination and are unhelpful to Plaintiff's position.

Plaintiff contends that the ALJ erred in failing to mention the workshop evaluation Mr. Burridge performed. *Doc. 22* at 8. Mr. Burridge concluded that while Plaintiff "seems to have the skills necessary . . . to perform simple work-related activities," "[h]is capacity to perform these simple work-related activities . . . appears doubtful, based on his participation in this vocational assessment." *Id.* at 8 (quoting AR at 190). Mr. Burridge further opined that Plaintiff's "ability to perform work-related activities, from a psychological or physical point-of-view, would require the further insights of appropriate medical or behavioral health professionals." *Id.* (quoting AR at 190).

The Court finds Plaintiff's representation is inaccurate, as ALJ O'Melinn specifically referenced the January 2011 "vocational evaluation, which had inconsistent test findings[,]" in his opinion. AR at 38 (discussing AR at 79). Moreover, Mr. Burridge did not opine that Plaintiff's impairments absolutely impaired him from working, but recommended further insights from medical or behavioral health professionals. The ALJ

supported employment." Doc. 22 at 7 (citing AR at 423). The ALJ did not misrepresent Dr. DeLong's findings, as the Court details above.

had the benefit of such opinions—i.e., from Dr. DeLong. The Court finds that ALJ O'Melinn's opinion complies with SSR 85-16, which provides that an ALJ must use "[i]nformation derived from workshop evaluations . . . in conjunction with the clinical evidence of impairment," and resolve "all conflicts between workshop evaluation evidence and the conclusions based on objective medical findings . . . ." SSR 85-16, 1985 WL 56855, at *4 (Jan. 1, 1985). Plaintiff has not pointed to any conflicts between Mr. Burridge's opinion and the objective medical findings. Thus, the Court does not agree that the ALJ's decision requires reversal or remand on this issue. Moreover, the Court finds that the ALJ's assessment of Dr. Sachs' opinion was adequate under 20 C.F.R. § 416.927.

**B.    The ALJ also adequately considered Plaintiff's combination of impairments.**

Plaintiff argues that "[t]he ALJ did not discuss the combined effects of [Plaintiff's] impairments and provided no support for his finding regarding the combination of impairments" in violation of SSR 96-8p. *Doc. 22* at 10. Plaintiff contends that while the ALJ "reasoned that [Plaintiff] could perform a limited range of light work due to his back disorder and that he would be limited to simple work with limited social contact due to his mental disorders[,]" ALJ O'Melinn "provided no discussion regarding the effects of the combination of impairments on the RFC finding." *Id.* (citing AR at 37-44). Plaintiff acknowledges that the ALJ found severe mental and physical impairments and determined that Plaintiff "did not have a combination of impairments that meets or medically equals the severity of a listed impairment." *Id.* (citing AR at 33, 34.)

Where the ALJ finds "a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process." *Cameron v. Halter*, 6 F. App'x 823, 825 (10th Cir. 2001) (quoting 42 U.S.C. § 423(d)(2)(B); citing 20 C.F.R. § 416.923). Here, the ALJ considered Plaintiff's severe mental and physical impairments at Steps Two and Three, and he discussed them at length at Step Four. *See* AR at 33-44. Moreover, Plaintiff does not "put forth any specific medical evidence linking" his mental and physical impairments to demonstrate that the ALJ's determination concerning the combination of impairments was in error. *See Angel v. Barnhart*, 329 F.3d 1208, 1211 (10th Cir. 2003). Where the ALJ declares that he has considered the impairments in combination, as ALJ O'Melinn did here, the Tenth Circuit's "practice is to take the ALJ 'at his word.'" *Wall*, 561 F.3d at 1070 (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (brackets and internal quotation omitted)). Ultimately, the Court finds that the ALJ's findings were supported by substantial evidence.

## V. Conclusion

The Court finds that the ALJ appropriately considered opinion evidence and properly considered Plaintiff's combination of impairments.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum (*Doc. 22*) is **DENIED**.

**IT IS FURTHER ORDERED** that the Court will enter concurrently herewith a Final Order, pursuant to Rule 58 of the Federal Rules of Civil Procedure, affirming the

decision of the Acting Commissioner and dismissing this case with prejudice.


_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent